John E. Mason, Jr. (California State Bar No. 51116)
LAW OFFICES OF JOHN MASON, LLP
40 Music Square West
Nashville, Tennessee 37203
Tel: (615) 259-5325
John@Mason.Legal

James J. Little (California State Bar No. 123373)
J.J. LITTLE & ASSOCIATES, P.C.
13763 Fiji Way, Suite EU4
Marina del Rey, California  90292
Tel:     (310) 622-9527
Fax:     (310) 477-9527
jjlittle@jjlittleandassociates.com

ATTORNEYS FOR PLAINTIFF KENNY NOLAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| KENNY NOLAN, dba SOUND OF NOLAN MUSIC and dba KENNY NOLAN PUBLISHING;<br><br>        Plaintiff,<br><br>  vs.<br><br>SONY/ATV MUSIC PUBLISHING LLC, a Delaware Corporation; STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation, JOBETE MUSIC CO., a Michigan Corporation, EMI APRIL MUSIC INC, a Connecticut Corporation, EMI BLACKWOOD MUSIC, INC., a Connecticut Corporation; and DOES 1 through 30, inclusive;<br><br>        Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR:**<br><br>1.   **DECLARATORY JUDGMENT;**<br>2.   **ACCOUNTING;**<br>3.   **OPEN BOOK ACCOUNT;**<br>4.   **BREACH OF CONTRACT;**<br>5.   **BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING;**<br>6.   **UNJUST ENRICHMENT;**<br>7.   **CONVERSION**<br>8.   **BREACH OF FIDUCIARY DUTY;**<br>9.   **FRAUD – INTENTIONAL MISREPRESENTATION;**<br>10.  **FRAUD – NEGLIGENT MISREPRESENTATION; and**<br>11.  **UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for declaratory judgment, accounting, damages and injunctive relief in connection with the United States copyright in certain musical compositions written or co-written by Plaintiff Kenny Nolan.

2. Kenny Nolan composed iconic hits over the course of his decades long career in the music industry.  Over the years, the publishing houses in the music industry have purported to buy and sell among themselves interests in the copyright and royalties of his works.  In this action, Kenny Nolan seeks judicial relief clarifying that he owns the rights to the songs he composed and awarding him damages for royalties misappropriated by Defendants under the cover of a fraudulent scheme to hide their misdeeds.

3. Defendants have together claimed ownership of the renewal term in Plaintiff's copyright to songs written by him, exploiting his works for their own profit even though he has never assigned his interest in the renewal term of the affected songs to anyone.  Plaintiff seeks a declaration that he owns those compositions and enjoys the exclusive right to exploit them and profit from them in the renewal term of copyright.

4. Defendants have also, as part of a longstanding pattern and practice of misconduct, fraudulently misappropriated Plaintiff's royalties for their own benefit.  Plaintiff seeks an award of damages and/or restitution, and a judgment holding Defendants' accountable and deterring them from continuing their dishonest dealings with composers.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.  The action for declaratory judgment is

brought pursuant to 28 U.S.C. § 2201, which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

6. Personal jurisdiction over each of the Defendants is proper in this Court on the grounds that, among other reasons, (a) Defendants and/or Defendants' agents transact business in the State of California and purposely avail themselves of the benefits of doing business in this state; (b) Defendants' wrongful conduct alleged herein occurred in the State of California and this District; and (c) the Agreements that are the subject of this action were entered into in this District.

7. Venue for this action properly lies in this District, pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

8. Kenny Nolan is and at all time relevant hereto was a resident of Los Angeles, California operating under the unincorporated dbas of Sound of Nolan Music and Kenny Nolan Publishing Co. Kenny Nolan has enjoyed a successful decades-long career in the music industry and has composed multiple iconic songs that continue to produce substantial royalty revenue.

9. Upon information and belief, Defendant Sony/ATV Music Publishing ("Sony/ATV") is a Delaware business entity.  Sony/ATV through its divisions, related and affiliated entities, and predecessors in interest including, but not limited to EMI Music, EMI April Music Inc., EMI Blackwood Music Inc., Stone Diamond Music Corporation, Coral Rock Music, Jobete Music Co., Tiger Lily Records, and Two One Two Music, has systematically and continuously availed itself of the privilege of doing business in California to exploit copyrights and maintained substantial and frequent contacts with this District in connection with the facts alleged in this Complaint, including an office in Los Angeles, such that Sony/ATV is subject to personal jurisdiction in California. Due to the opaque nature of internal corporate transactions within the Sony/ATV corporate family of

COMPLAINT
3

businesses, Plaintiff cannot identify each member of the Sony/ATV corporate family implicated by the allegations of this complaint and will amend to name doe defendants as appropriate after discovery. Upon information and belief, Plaintiff alleges that Sony/ATV has assumed all rights, obligations and liabilities of members of its corporate family, its divisions, related and affiliated entities, and predecessors in interest, including but not limited to EMI Music, EMI April Music Inc., EMI Blackwood Music Inc., Stone Diamond, Coral Rock Music, Tiger Lily Records, and Two One Two Music among others, for purposes of the matters alleged in this complaint.  As used in this complaint, "Sony/ATV" refers to all relevant members of the Sony/ATV corporate family, its divisions, related and affiliated entities, and predecessors in interest, including but not limited to EMI Music, EMI April Music Inc., EMI Blackwood Music Inc., Stone Diamond, Coral Rock Music, Tiger Lily Records, and Two One Two Music among others.

10. Upon information and belief, Defendant Stone Diamond Music Corporation ("Stone Diamond") is a Michigan corporation registered to do business in California which has systematically and continuously availed itself of the privilege of doing business in California to exploit copyrights since as early as 1973 maintaining substantial and frequent contacts, including offices, with this District, both generally and specifically in connection with the facts alleged in this Complaint, such that Stone Diamond is subject to personal jurisdiction in California.  Upon information and belief Plaintiff alleges that Sony/ATV is has assumed all rights, obligations and liabilities of Stone Diamond Music Corporation with respect to contracts with Kenny Nolan.

11. Upon information and belief, Defendants EMI April Music Inc. and EMI Blackwood Music Inc. are Connecticut corporations maintaining their principal places of business in New York, each of which is registered to do business in California.   EMI April Music Inc. and EMI Blackwood Music Inc. are subsidiaries in the EMI Music family of business

entities which have identified themselves in copyright registration materials as assignees of interests in copyrights of Kenny Nolan Music.  Each of these entities has systematically and continuously availed itself of the privilege of doing business in California to exploit copyrights maintaining substantial and frequent contacts, including offices, with this District, both generally and specifically in connection with the facts alleged in this Complaint, such that each is subject to personal jurisdiction in California. Due to the opaque nature of internal corporate transactions within the EMI Music corporate family of businesses, Plaintiff cannot identify each member of the EMI Music corporate family implicated by the allegations of this complaint and will amend to name doe defendants as appropriate after discovery.  As used in this complaint, "EMI" refers to all relevant members of the EMI Music corporate family, its divisions, related and affiliated entities, and predecessors in interest.  Upon information and belief Plaintiff alleges that Sony/ATV is has assumed all rights, obligations and liabilities of EMI with respect to Kenny Nolan.

12. The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 30, inclusive, are presently unknown to Plaintiff, and Plaintiff therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and based thereon alleges that each of the Doe Defendants was and is either intentionally, negligently, or in some other manner, the cause or contributing cause of or otherwise responsible for the injuries and damages that have been, are being, and will be sustained by Plaintiff as alleged herein. Plaintiff will amend this Complaint, if necessary, to allege the true names and capacities of the Doe Defendants, together with such allegations as may be appropriate, when the same have been ascertained.

13. At all times relevant hereto, each of the Defendants was an agent, servant or employee of each of the remaining Defendants and at all times acted within the time, purpose, or

scope of that agency or employment, and with the express or implied knowledge, permission or consent of the remaining Defendants, and each of them, and thereafter each Defendant approved and ratified the wrongful conduct of the remaining Defendants, as herein alleged.

## **FACTUAL ALLEGATIONS**

14. Kenny Nolan is an accomplished composer of popular music with multiple chart-topping hit records to his name including many songs written by him and performed by major recording artists.

15. In the early 1970s, Kenny Nolan met performer and producer Bob Crewe who recognized Mr. Nolan as a talented songwriter.   The two then embarked on a productive songwriting partnership.

16. Between 1972 and 1974, the duo co-wrote more than seventy songs including:

*Unexpected Pleasure; Oh Sam; I Am Not Afraid; Italian Movie Theme; World Without End; Bundle Of Love; In My Eyes Forever; What A Mornin' Oh Lord; Cooling Off; The Bigger They Are; Lighten Up; Bethesda Fountain; Get Dancin' I; Dancin' Kid; Finders Keepers; Swing Your Daddy; Worst Kind Of Dream; Idaho; If You Can Be Bad (So Can I); Tears Are Heavy; (Cancha Hear) Tomorrow Laughin'; Mandy (Take Off Your Raincoat And Stay For A While); Chicken Bone; The Turtle Dove Song; Touch Don't Talk; The Boogie Flap; Moon Song; Fini; Spinning Wheels;  Sometimes The Good Times; Waking Up To Love; A Girl's Goodbye;  Don't Let A Day Go By;  Take Me Seriously;  Ivy 'N Oak;  Looking Out The Window;  You Went Too Far; Somebody's Always Crying; Plans; Melodie; Just A Man; Claudia; Where Do The Stars Go?; Good-Bye My Love; Happy Lullabye; My World Will Wait; Zanzibar; Gonna Paint My Mailbox Blue; Roses for Lillie; Letter to Myself; Our Own Anniversary; My Happy Birthday Baby; So Good; My Bed; Far As We Felt Like Goin'; Volcano; Wedding By The Sea; Only Want To Be*

*Near You; Ms. Mona Morgan; He Did Ya Good (But I'll Do You Better); Nasty; Gorilla Rock; Lady Marmalade; Ride, Ride, Ride; Dream On; You've Got Me Singin' Again; Hickory; Charisma; My Eyes Adored You; Hymn To Her; Lovers; Tomorrow Tonight; Mother Nature, Father Time (Made Me Love You); Hate Myself In the Morning (If I Let You Go Tonight); My Name Is Black; Hot Ta Trot;* and *Stranger.*

17. The catalog of songs co-written by Kenny Nolan and Bob Crewe in these years is very valuable intellectual property including multiple chart-topping hits. For example, the song *Lady Marmalade* written by Kenny Nolan and Bob Crewe became a number one hit record for the group Labelle in 1974, topped European and international charts again in 1998 when covered by the band All Saints, and went to the number one slot on the Billboard charts again in 2001 as part of the *Moulin Rouge* soundtrack.

**The Split-Publishing Agreement and the Co-Written Compositions**

18. On or about October 1, 1974, Kenny Nolan, dba Kenny Nolan Publishing, entered into a split-publishing agreement with Bob Crewe, dba Hearts Delight Music, (the "Nolan/Crewe Split Publishing Agreement").

19. The Nolan/Crewe Split Publishing Agreement specified the terms applicable to two distinct categories of songs written or co-written by Kenny Nolan.

20. First, the Nolan/Crewe Split Publishing Agreement addressed "[m]usical compositions written in whole or in part by [Kenny Nolan], alone or together with any other person (*other than Robert S. Crewe*) . . . which are now and/or may hereafter be owned and/or controlled . . . by [Kenny Nolan]," defined by the agreement as the "Compositions." The agreement provided that, for purposes of those Kenny Nolan-authored "Compositions" (excluding works co-authored with Bob Crewe and certain additional works in an appendix as already assigned by Kenny Nolan to another publisher), Bob Crewe, dba Heart's Delight Music, and Kenny Nolan, dba Kenny Nolan publishing, "shall be co-

owners . . . and . . . shall each have an undivided fifty percent (50%) . . . interest in . . . said Compositions and the copyrights thereto."

21. Kenny Nolan granted Bob Crewe, dba Heart' Delight Music, the right and duty to administer the copyrighted material including the right to "print, publish, sell, use and license . . . the Compositions" and the right/duty to collect and distribute "all revenue. . . .from the Compositions."   Crewe/Heart' Delight committed to pay 50% of net income on the "Compositions" to Kenny Nolan.

22. Second, the Nolan/Crewe Split Publishing Agreement addressed compositions written by Kenny Nolan "in collaboration with Robert S. Crewe, whether written prior or subsequent to the date hereof" (hereinafter the "Co-Written Compositions")  For those songs co-written by Kenny Nolan with Bob Crewe, the Nolan/Crewe Split Publishing Agreement provides that "the copyright, and net 'publisher's share' of any income payable on any such composition[s]" will be divided 30% to Bob Crewe's dba Heart's Delight Music, 20% to Kenny Nolan's dba Kenny Nolan Publishing, and 50% to publisher Stone Diamond Music, with which Bob Crewe had a pre-existing split-publishing agreement.

23. A subsequent letter agreement signed by Stone Diamond Music, Tanny Boy Music and Kenny Nolan Publishing on January 18, 1974 augments the terms of the split-publishing agreement (the "Letter of Clarification").  The letter agreement applies only to "all musical compositions heretofore and/or hereafter written by Bob Crewe in collaboration with Kenny Nolan" (ie the Co-written Compositions) and provides that Stone Diamond will file copyright registrations for the Co-written Compositions, and, consistent with the Nolan/Crewe Split Publishing Agreement, cause them to be "be registered and copyrighted in the joint names of the three (3) copyright proprietors thereof as follows: "TannyBoy Music Company/ Stone Diamond Music Corporation/Kenny Nolan Publishing Company."   Also the letter agreement affirms the the division of "the

COMPLAINT
8

copyright, and the net 'publisher's share'" of any income provided by the Nolan/Crewe Split Publishing Agreement.  The agreement also clarifies that in addition to the 50%/30%/20% division of the "publisher's share" of income described in the Nolan/Crewe Split Publishing Agreement,  Bob Crewe and Nolan will each take 50% of the "writer's share" of royalties for the Co-written Compositions.

24. The Letter of Clarification further empowers and obligates Stone Diamond Music to "exploit and administer" the Co-Written Compositions.

25. The Letter of Clarification leaves Stone Diamond with a duty to account for income earned from exploitation of the Co-Written Compositions and to pay the "publisher's share" of royalties earned in the initial term of copyright to each of the three copyright claimants as provided in the Nolan/Crewe Split Publishing Agreement.  With respect to the "writer's share" if income earned from exploitation of the Co-Written Compositions during the initial term of copyright for those songs, the Letter of Clarification authorizes Stone Diamond to pay both Kenny Nolan and Bob Crewe's share directly to Heart's Delight music and confirms that Kenny Nolan will look exclusively to Heart's Delight for payment of his "writer's share" of that income.

26. On information and belief, Bob Crewe, dba Tannyboy Music, had previously entered into a split publishing agreement with Stone Diamond Music, to which Kenny Nolan was not a party that assigned some portion of Bob Crewe's interest in the copyright in songs he wrote or co-wrote to Stone Diamond Music.

27. As part of the bargain struck in the Nolan/Crewe Split Publishing Agreement, Kenny Nolan agreed to defray, during the initial term of copyright of the Co-Written Compositions, the loss incurred by Bob Crewe by virtue of Bob Crewe's prior assignment of a portion of his own copyright interest in works written or co-written by him.  As a result, Kenny Nolan agreed to accept a smaller share of ownership in the initial term of copyright of the Co-Written works and a smaller percentage of the royalty

income earned in the initial term of copyright in the Co-Written Compositions than he would otherwise enjoy as a co-writer of the songs.

28. Taken together, the Nolan/Crewe Split Publishing Agreement and the Letter of Clarification provide Kenny Nolan, dba Kenny Nolan Publishing, with a right to 35% of the income total earned from exploitation of the Co-written compositions in the initial term of copyright, consisting of 50% of the "writer's share" (which in turn encompasses 50% of total income earned) and 20% of the "publisher's share" (which in turn encompasses 50% of the total income earned).

29. As provided by the Letter of Clarification, Stone Diamond caused the Co-Written Compositions to be registered with the United States Copyright Office listing Kenny Nolan and Bob Crewe as co-authors of the words and music and identifying TannyBoy Music Company, Stone Diamond Music Corporation and Kenny Nolan Publishing Company and the three copyright claimants of the initial term of copyright.

30. The Nolan/Crewe Split Publishing Agreement expired in 1974 when Bob Crewe notified Kenny Nolan that he would not exercise his right to renew the agreement for an additional year beyond its explicit one-year term.

31. On September 12, 1974 Crewe and Nolan executed a letter agreement clarifying their expectations going forward after the expiration of the Nolan/Crewe Split Publishing Agreement (the "Termination Agreement").  The agreement provided that "said termination shall not affect our respective rights and obligations with respect to . . . any musical compositions subject to said songwriter's and split-publishing agreement all of which said musical compositions are expressly designated on Schedule A attached hereto."  Under the agreement, Crewe agreed, in exchange for Nolan's commitment to be available for any needed rewrites of the jointly written songs, "that the only musical compositions that shall remain subject to the terms of your October 1, 1973 Songwriter's and split-publishing agreement with me are those, and only those, compositions

COMPLAINT
10

specifically enumerated on Schedule "A" attached hereto . . . ." The 77 songs listed in Schedule A to the Termination Agreement are Co-Written Compositions under the terms of the Nolan/Crewe Split Publishing Agreement and include the songs listed in Paragraph 16, above, including *Lady Marmalade*.

32. On September 26, 1975 Crewe, Nolan and Stone Diamond entered into an additional letter agreement clarifying their agreement that Stone Diamond would pay Kenny Nolan's "writer's share" and "publisher's share" of royalties directly to him (rather than to Crewe's Heart's Delight Music for redistribution to Nolan) after Stone Diamond recouped advances it had made to Crewe.

33. The 1909 Copyright Act in effect at the time that Kenny Nolan and Bob Crewe wrote and published the Co-Written Compositions vested copyright ownership of both an initial 28-year term of copyright and a separate renewal term in the co-authors of a creative work as tenants in common with a presumption that they owned equal shares thereof. That presumption could be altered for the initial term of copyright and/or the renewal term by an agreement to assign of copyright ownership. Any assignment of copyright ownership in the renewal term of copyright must be explicit to be effective.

34. Neither the Nolan/Crewe Split Publishing Agreement, the Letter of Clarification nor the Termination Agreement makes any assignment of, or even mentions, the renewal term in copyright for the Co-written Compositions co-authored by Kenny Nolan with Bob Crewe.

35. The initial 28-year term of Copyright for all Co-written compositions published in 1973 expired on December 31, 2000.

36. The initial 28-year term of Copyright for all Co-written compositions published in 1974 expired on December 31, 2001.

37. Under 1976 amendments to the Copyright Act, the copyright in the Co-Written Compositions automatically renewed for a renewal term for the benefit of the copyright owner upon the expiration of the initial term of copyright in each song.

38. In the years between the 1973 execution of the Nolan/Crewe Split Publishing Agreement and the expiration of the initial term of copyright in the Co-Written Compositions, Bob Crewe, dba Heart's Delight Music, and Stone Diamond Music each reassigned their ownership interest in the initial copyright term of the Co-written compositions.

39. On information and belief, Stone Diamond assigned its interest in the initial term of copyright in the Co-Written Compositions to Jobete Music, a division of Motown Records, with Jobete Music assuming all rights and duties of Stone Diamond with respect to the Co-Written Compositions.

40. On information and belief, Jobete Music later reassigned its assigned interest in the initial term of copyright in the Co-Written Compositions to EMI, with EMI assuming all rights and duties of Jobete Music with respect to the Co-Written Compositions.  On information and belief, EMI owned Jobete Music's assigned interest in the initial term of copyright in the Co-Written Compositions when those initial terms ended in 2000 and 2001.

41. On information and belief, EMI has reassigned its assigned interest in the initial term of copyright in the Co-Written Compositions to Sony/ATV Music Publishing, LLC with Sony/ATV assuming all rights and duties of EMI with respect to the Co-Written Compositions.

42. As co-author of the Co-Written Compositions, Kenny Nolan enjoys an equal 50% ownership of the renewal term in copyright for each of those works.

43. Nonetheless, Sony/ATV, EMI and Jobete Music and Stone Diamond Music before it have paid royalties to Kenny Nolan on income earned from exploitation of the Co-Written Compositions at the rate of 35% of the total income earned, consistent with his

contractual share of income in the initial term of copyright in the Co-Written Compositions.

44. On information and belief, Sony/ATV, EMI and Jobete Music and Stone Diamond Music before it, have deliberately underpaid Kenny Nolan for his share of royalty income due from exploitation of the Co-Written Compositions in the renewal term of copyright in order to maximize their own profit and income.

45. On information and belief, Sony/ATV, EMI and Jobete Music and Stone Diamond Music before it, have engaged in a deliberate campaign, including through deliberately fraudulent and misleading royalty statements, to disguise the amount of royalties due to Kenny Nolan for the renewal term of copyright in the Co-Written Compositions so that he would not discover this underpayment of royalties.

**Unpaid Publishing Royalties and Deficient Accounting**

46. Sony/ATV is defined above and used herein to refer to all relevant members of the Sony/ATV corporate family, its divisions, related and affiliated entities, and predecessors in interest, including but not limited to EMI Music, EMI April Music Inc., EMI Blackwood Music Inc., Stone Diamond, Jobete Music Co., Coral Rock Music, Tiger Lily Records, and Two One Two Music among others.

47. The split-publishing agreement and subsequent amendments and various other publishing agreements between Kenny Nolan and corporate predecessors in interest of Sony/ATV entrust Sony/ATV with the right and duty to administer licensing and collection of royalties for the covered compositions.  Those agreements specify the terms of Sony/ATV's administration including the specific and limited fees and charges that Sony/ATV permissibly may deduct from income earned on the compositions before paying Kenny Nolan his share of royalties. Those agreements are governed by and construed according to California law.

48. On information and belief, Sony-ATV has systematically failed to pay royalties due on income derived from exploitation of songs in the Kenny Nolan catalogue and have, through fraudulent royalty statements, deliberately misled Mr. Nolan to hide their malfeasance.

49. Federal copyright law presumptively affords composers the exclusive right to exploit their compositions for profit.  Publishing companies are authorized to administer and otherwise exploit the intellectual property of composers only pursuant to contractual assignments and all conditions and obligations placed thereon.  In addition to explicit commitments, the split-publishing agreement and subsequent amendments as well as other publishing agreements governing the Kenny Nola catalogue contained the following implied terms and covenants:

   a)  That the parties would carry out their obligations in good faith and by dealing fairly with each other;

   b)  That none of the parties would act in such a manner as to destroy the other's expected fruits and benefits from the agreements;

   c)  That the publisher would perform its obligations under the agreements, including the payment of amounts due to Kenny Nolan and making accountings to Kenny Nolan, using that degree of care, skill, and diligence expected of companies comparable to the publisher, and that such obligation would be undertaken in good faith for the mutual benefit of parties to the agreements.

   d)  That the publisher would do everything that the agreements presuppose or contemplate it would do to accomplish its purposes;

   e)  That the computation of royalties, and particularly the computation of the specified fees and expenses permissibly deductible from such royalties would be performed in good faith, honestly and without deception and deceit, so that Kenny Nolan would realize his expected fruits of the agreement;

COMPLAINT
14

f) That the written accounting statements would be rendered to Kenny Nolan timely and in good faith, without deception or deceit, so that Kenny Nolan would receive accurate information concerning the amounts owed to him under the agreements, and would receive those amounts.

50. Kenny Nolan, after providing fair notice, sought to audit royalty income due to Mr. Nolan from the books of Sony/ATV in order to ensure that he was being fairly and honestly paid.

51. Sony/ATV, as part of a consistent pattern and practice of denying composers access to basic records required for a competent audit, blatantly denied access to crucial records, obscured income, and deliberately frustrated all attempts at a fair and comprehensive accounting.  As a result of Sony/ATV's misconduct, Mr. Nolan's auditors were denied:

a) access to records from relevant time periods due to artificial constraints placed on the audit by Sony/ATV staff;

b) access to primary records and statements from lucrative third party aggregators;

c) reasonable time with Sony/ATV's database to conduct their review;

d) access to foreign subsidiaries of Sony/ATV books and records;

e) access to all books and records, not just Sony's definition of royalty-bearing monies received and paid;

f) access to agreements, licenses, and fees received for lump sums in the form of advances, minimum guarantees, etc.; and

g) access to all suspense accounts of Sony/ATV and its subsidiaries.

52. Sony/ATV has created has maintained and continues to maintain a "suspense" account for royalty payments delivered to Sony/ATV by third parties which Sony/ATV unilaterally declares it cannot match to a particular composer.   Sony/ATV routinely, intentionally and systematically mistreats, misclassifies and misappropriates royalty income through manipulation of its suspense account.

53. In particular, Sony/ATV has placed into its suspense account royalties that are readily identifiable as associated with Kenny Nolan for compositions he has written which Sony/ATV has no contractual right to administer.  These payments, mistakenly transferred to Sony/ATV by third party aggregators, have been placed by Sony/ATV into its suspense account and never returned to the third party aggregators, paid to Kenny Nolan, or escheated to the state as required by California law.

54. Furthermore, Sony/ATV has placed into its suspense account royalties it has received from third parties for songs readily identifiable as composed by Kenny Nolan and for which Sony/ATV has a contractual right and obligation to administer. On information and belief, Sony/ATV has made a willful choice not to track royalty income on some songs in the Kenny Nolan catalogue, choosing instead to place royalties related to those songs into its suspense account without paying the royalties to Kenny Nolan or escheating the contents of the suspense account to the state as required by California law.

55. On information and belief, Sony/ATV has misappropriated the contents of its suspense account without escheating those funds to the state as required by California law.

56. Based on the limited audit results that Sony/ATV has allowed Mr. Nolan to obtain and other information, Mr. Nolan believes and alleges that Sony/ATV and its subsidiaries and predecessors in interest have deliberately and systematically failed to pay him income due on his compositions including, but not limited to, failing to pay Kenny Nolan or to report on royalty statements his full royalty share of:

   a)  co-publishing royalties for performance income collected from ASCAP;

   b)  royalties from domestic sources against which Sony/ATV charged a contractually prohibited administrative fee for domestic sources of royalty income;

   c)  royalties from foreign sources against which Sony/ATV charged a contractually prohibited administrative fee for foreign sources of royalty income;

d)  royalties from foreign sources which Sony/ATV has misappropriated to its own use by paying out to Kenny Nolan as little as 5% of royalties received;

e)   "black box" income received by Sony/ATV from various sources;

f)  proceeds of catalogue licensing fees and other income from various streaming and music download services;

g)  foreign royalties against which Sony/ATV charged contractually prohibited deductions for foreign income taxes which Sony/ATV then recouped a second time as deductions against its own domestic taxes;

h)  royalties on income earned from advertising, licenses, and other agreements' lump sums in the form of advances, minimum guarantees and other revenue streams;

i)  foreign broadcast mechanical royalties;

j)  royalties and other income derived from the exploitation of his compositions for the hit Broadway play, *Jersey Boys*;

k)  royalties for covers and adaptations of his compositions including his composition "*I Will*" which was covered by pop star Usher in 2000;

l)  unknown royalties apparently misappropriated by Sony/ATV as evidenced by a sudden and marked decline in royalty income paid to Kenny Nolan and reported on royalty statements upon the conversion of royalty accounting and tracking responsibility to Sony/ATV from EMI, its corporate predecessor; and

m)  incomplete documents provided.

57.  As a result of Defendant's withholding for their own use of income due to Kenny Nolan from exploitation of the Co-Written Compositions during the renewal term of copyright for those songs, as well as other royalty income due to Kenny Nolan, Kenny Nolan has suffered damages of up to $100,000,000, but in any event far in excess of $75,000, in a specific amount to be proven at trial.

58. Kenny Nolan did not discover or have reason to discover Sony/ATV's breaches and tortious misconduct until his audit of Sony/ATV's books.  Until that time, Kenny Nolan was ignorant of any cause of action against Sony/ATV or its subsidiaries or predecessors, through no fault of his own.  Sony/ATV's intentionally designed its audit procedures and accounting protocols to hide information which would have enabled Kenny Nolan to discover Sony/ATVs misconduct.

59. The Sony/ATV royalty statements, and EMI's royalty statements before that, were fraudulent and designed to conceal and disguise the companies' breaches and other misconduct by stating falsely that the companies were paying out 100% of royalties due to Kenny Nolan and stating affirmatively that they reported all relevant royalty income. Notwithstanding the representations made in the companies' royalty statements they affirmatively knew and deliberately received, misappropriated and concealed royalty income they knew to be due and owing to Kenny Nolan.

## FIRST CLAIM FOR RELIEF

**(For Declaratory Relief Pursuant to 28 U.S.C. § 2201 *et seq*. [Declaratory Judgment Act] – Against All Defendants)**

60. Plaintiff repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 59, inclusive, of this Complaint.

61.  Pursuant to 28 U.S.C. §2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

62. An actual and substantial controversy exists between Kenny Nolan and Defendants as to the true ownership of the renewal copyright in the Co-Written Compositions.

63. Kenny Nolan believes, on the one hand, that as the co-writer of the Co-Written Compositions he enjoys a 50% ownership share of the copyright and resulting income earned in the renewal term of copyright of the Co-Written Compositions.

64. Kenny Nolan further believes that he has never assigned any portion of his 50% ownership interest in the renewal term of the Co-Written Compositions to any party.

65. On information and belief, Kenny Nolan alleges that Defendants believe, on the other hand, that they, or some of them, own and/or have some right to a portion of Kenny Nolan's 50% ownership interest in the renewal term of copyright of the Co-Written Compositions and that Kenny Nolan is entitled to less than 50% of the income earned from exploitation of the Co-Written Compositions during the renewal term of copyright.

66. Plaintiff requests, therefore, a declaratory judgment that Kenny Nolan has not assigned any portion of his ownership in the renewal term copyright for the Co-Written Compositions to any of the Defendants and that he is entitled to his 50% ownership of the renewal term of copyright in the Co-Written Compositions and to income earned thereon.

## SECOND CLAIM FOR RELIEF

### (Accounting -  Against All Defendants)

67. Plaintiff repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 66, inclusive, of this Complaint.

68. Plaintiff is informed and believes, and on that basis alleges, that Defendants have consummated and/or otherwise intentionally engaged in numerous financial transactions by which they, or some of them, have converted for their own personal use and benefit monies rightfully belonging to Plaintiff and/or monies to which Plaintiff is otherwise entitled.

69. The exact details of these financial transactions are unknown and could not be known to Plaintiff and, hence, Plaintiff cannot ascertain the precise amount of money due to it from Defendants. As a result, an accounting is required to determine these issues.

70. Plaintiff has demanded that Defendants render a full, complete and accurate accounting to him to ascertain the full amount of money owed to him, but Defendants failed and refused and continue to fail and refuse to render such an accounting to him. Thus, Plaintiff requests that the Court order Defendants to render the accounting to him.

71. To the extent Defendants assert that Plaintiff's right to accounting is limited by any statute of limitations, the applicable statute of limitations is tolled, because, among other reasons, (a) Defendants agreed to toll the statute of limitations, (b) Plaintiff did not discover, nor could he with reasonable diligence have discovered, the breaches prior to the expiration of the relevant period of time; and (c) Defendants made various misrepresentations to Plaintiff relating to the relevant facts, and Defendants actively concealed from Plaintiff said omissions and misrepresentations and the true information concerning the same in order to induce him to refrain from filing this action, and Plaintiff reasonably relied on the misrepresentations and omissions to his detriment.

**THIRD CAUSE OF ACTION**

**(Common Counts – Open Book Account: California Code Of Civil Procedure § 337a Against All Defendants)**

72. Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 71, above, as though fully set forth herein.

73. In order to monitor sales of the copyrighted musical compositions, collect royalties and calculate royalties payable to the owners of the various copyright interests, it is customary in the recorded music industry to establish a royalty account which is generally administered by the subject publishing company. This royalty account is

maintained as an open book account within the meaning of California Code of Civil Procedure § 337a and new entries are made on an ongoing basis to reflect income collected by the publishing house, entitlement to royalties and royalties paid

74. Consistent with this practice and pursuant to Defendants' agreements with Plaintiff, Defendants keep, and at all relevant times have kept, open book accounts reflecting the debits and credits made to Plaintiff's account with Defendants from inception. Plaintiff is informed and believes that said open book accounts include entries reflecting income Defendants have received, and continue to receive, from third parties.  As Defendants have changed corporate names and structures in the intervening years, each successor in interest and assumed responsibility for managing and updating the same, continuous open book account.

75. These book accounts constitute the principal records of the transactions between Defendants and Plaintiff.

76. Plaintiff is informed and believes that said book accounts are, and at all relevant times were, created in the regular course of Defendants' business and kept in a reasonably permanent form and manner.

77. Defendants have become indebted to Plaintiff on said open book accounts in an amount equal to Defendants' underpayment on the income Defendants have received, and continue to receive, from exploitation of Plaintiff's compositions.

78. As such, the outstanding balance owed by Defendants to Plaintiff on said open book accounts, including a calculation of the amount of underpayment with respect to royalties, can be determined by examining all of the debits and credits recorded for each account.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Contract – Against all Defendants)**

79. Plaintiff repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 78 inclusive, of this Complaint.

80. Defendants have entered into publishing agreements with Kenny Nolan for his compositions.  As corporate names have been changed, corporate entities acquired and corporate interests transferred and assigned over the years, each successor business entity has assumed the rights, obligations and liabilities of its predecessor under these publishing agreements such that each Defendant is in privity of contract with Kenny Nolan with direct contractual duties owed to Kenny Nolan.

81. Defendants have willfully and consistently accounted to Plaintiff for, and paid over to Plaintiff, substantially less money than is properly due and owing to Plaintiff pursuant to the terms of the various publishing agreements between Defendants and Plaintiff. Defendants have breached the various publishing agreements from the period that the first royalty statement was due to the present by, among other things failing to pay Kenny Nolan or to report on royalty statements his full royalty share of:

a)  co-publishing royalties for performance income collected from ASCAP;

b)  royalties from domestic sources against which Defendants charged a contractually prohibited administrative fee for domestic sources of royalty income;

c)  royalties from foreign sources against which Defendants charged a contractually prohibited administrative fee for foreign sources of royalty income;

d)  royalties from foreign sources which Sony/ATV has misappropriated to its own use by paying out to Kenny Nolan as little as 5% of royalties received;

e)  "black box" income received by Defendants from various sources;

f)  proceeds of catalogue licensing fees and other income from various streaming and music download services;

g)  foreign royalties against which Defendants charged contractually prohibited deductions for foreign income taxes which Defendants then recouped a second time as deductions against its own domestic taxes;

h)  royalties on income earned from advertising and other revenue streams;

i)  foreign broadcast mechanical royalties;

j)  royalties and other income derived from the exploitation of his compositions for the hit Broadway play, *Jersey Boys*;

k)  royalties for covers and adaptations of his compositions including his composition "*I Will*" which was covered by pop star Usher in 2000;

l)  royalties misappropriated by Defendants as evidenced by a sudden and marked decline in royalty income paid to Kenny Nolan and reported on royalty statements upon the conversion of royalty accounting and tracking responsibility to Sony/ATV from EMI, its corporate predecessor;

m) royalties mistakenly paid by third parties to Defendants for compositions they have no right to administer but which were knowingly misclassified by Defendants into their suspense account and ultimately misappropriating them for their own purposes;

n)  royalties correctly paid by third parties to Defendants for compositions they have a contractual right and duty to administer but which they deliberately refused to account for, depositing those royalties instead into its suspense account and ultimately misappropriating them for their own purposes; and

o)  royalties deposited into a suspense account and misappropriated by Defendants to their own use rather than paying out to Kenny Nolan, returning to the third parties who made payments intended for Kenny Nolan, or escheating unclaimed funds to the state as required by California law.

82. Plaintiff has performed all conditions, covenants and promises required pursuant to the terms of the agreements, except those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of Defendants.

83. By reason of the foregoing and other acts not presently known by Plaintiff, Defendants have knowingly and materially breached their contractual obligations to him, and have wantonly and recklessly disregarded the rights of Plaintiff.

84. To the extent that any of those breaches occurred outside the applicable statute of limitations, the applicable statute of limitations is tolled, because, among other reasons, (a) Defendants agreed to toll the statute of limitations, (b) Plaintiff did not discover, nor could he with reasonable diligence have discovered, the breaches prior to the expiration of the relevant period of time; and (c) Defendants made various misrepresentations to Plaintiff relating to the relevant facts, and Defendants actively concealed from Plaintiff said omissions and misrepresentations and the true information concerning the same in order to induce him to refrain from filing this action, and Plaintiff reasonably relied on the misrepresentations and omissions to his detriment.

**FIFTH CAUSE OF ACTION**

**(Breach Of Implied Duty Of Good Faith And Fair Dealing – Against All Defendants)**

85. Plaintiff repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 84 inclusive, of this Complaint.

86. Where a contract confers on one party a power or discretion affecting the rights of the other, a duty is imposed to exercise such discretion in good faith and in accordance with fair dealing. By the course of conduct alleged herein, Defendants have not acted in good faith or in accordance with fair dealing by, among other things, deliberately concealing

royalty income, misappropriating royalty income, knowingly failing to pay royalty income due, and concealing their breaches through affirmative misrepresentations.

87. Defendants have breached the implied covenant of good faith and fair dealing implicit in the various publishing agreements.

88. Plaintiff has been damaged as a result of Defendants' breaches of the implied covenant of good faith and fair dealing by failing to properly account and provide adequate royalty compensation to Plaintiff. These underpayments constitute damages to Plaintiff that he otherwise would not have incurred, for which Plaintiff seeks relief as prayed below.

89. Plaintiff has performed all conditions, covenants and promises required pursuant to the terms of the agreements, except those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of Defendants.

90. By reason of the foregoing and other acts not presently known by Plaintiff, Defendants have knowingly and materially breached their contractual obligations to him, and have wantonly and recklessly disregarded the rights of Plaintiff.

91. As a direct and foreseeable result of Defendants' breaches of contract, Plaintiff has suffered general, special and incidental damages in an amount to be proven at trial plus pre-judgment and post-judgment interest at the legal rate.

92. To the extent that any of those breaches occurred outside the applicable statute of limitations, the applicable statute of limitations is tolled, because, among other reasons, (a) Defendants agreed to toll the statute of limitations, (b) Plaintiff did not discover, nor could he with reasonable diligence have discovered, the breaches prior to the expiration of the relevant period of time; and (c) Defendants made various misrepresentations to Plaintiff relating to the relevant facts, and Defendants actively concealed from Plaintiff said omissions and misrepresentations and the true information concerning the same in order to induce him to refrain from filing this action, and Plaintiff reasonably relied on the misrepresentations and omissions to his detriment.

**SIXTH CLAIM FOR RELIEF**

**(Unjust Enrichment– Against All Defendants)**

93. Plaintiff repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 92, inclusive, of this Complaint.

94. By failing to pay the royalty income due, Defendants have been unjustly enriched.

95. Accordingly, Plaintiff is entitled to a constructive trust over the monies being held by Defendants that should have been paid to him.

**SEVENTH CLAIM FOR RELIEF**

**(Conversion – Against all Defendants)**

96. Plaintiff repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 95, inclusive, of this Complaint.

97. On information and belief, Defendants converted to their own personal use and benefit assets and/or monies rightfully belonging to Plaintiff, as alleged herein above.

98. As a proximate result of the breaches by Defendants as herein alleged, Plaintiff has suffered general and special damages (including, *inter alia*, emotional distress) in an amount in excess of the jurisdictional limit of this Court.  Plaintiff will, if necessary, amend this Complaint to allege the exact amount of said damages once ascertained.

99. Plaintiff is informed and believed, and based thereon alleges, that Defendants committed the acts alleged herein willfully, maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff and from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to recover punitive damages from Defendants.

100. Plaintiff is informed and believed, and based thereon alleges, that Defendants committed the acts alleged herein willfully, maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff and from an improper and evil motive

amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to recover punitive damages from Defendants.

101. To the extent that any of those acts of conversion occurred outside the applicable statute of limitations, the applicable statute of limitations is tolled, because, among other reasons, (a) Defendants agreed to toll the statute of limitations, (b) Plaintiff did not discover, nor could he with reasonable diligence have discovered, the breaches prior to the expiration of the relevant period of time; and (c) Defendants made various misrepresentations to Plaintiff relating to the relevant facts, and Defendants actively concealed from Plaintiff said omissions and misrepresentations and the true information concerning the same in order to induce him to refrain from filing this action, and Plaintiff reasonably relied on the misrepresentations and omissions to his detriment.

## EIGHTH CLAIM FOR RELIEF

### (Breach Of Fiduciary Duty – Against All Defendants)

102. Plaintiff realleges and incorporates each allegation of paragraphs 1 through 100, above, as though fully set forth herein.

103. Defendants assumed a duty of agency to collect and distribute to copyright owners the income derived from exploitation of the Kenny Nolan's compositions.  These Defendants thereby owe Kenny Nolan, a fiduciary duty of loyalty and care, and had a duty to conduct their dealings with Kenny Nolan in good faith.

104. Defendants breached their fiduciary duties of loyalty and care to Plaintiff as alleged herein above, by a variety of different actions, including, but not limited to, denying Kenny Nolan's ownership of a full 50% share of the renewal term copyright for the Co-Written Compositions, withholding royalties due on certain categories of income derived from exploitation of the Co-Written Compositions, diverting to their own purposes a share of income derived from exploitation of the Co-Written Compositions during the

renewal term of Copyright that is owed to Kenny Nolan, and actively concealing from Kenny Nolan the share of royalties being diverted from him during the renewal term so that he could not identify the discrepancy.

105. Defendants further breached their fiduciary duties of loyalty and care to Plaintiff as alleged herein above, by a variety of different actions, including, but not limited to, deliberately concealing royalty income, misappropriating royalty income, knowingly failing to pay royalty income due, and concealing their breaches through affirmative misrepresentations

106. As a proximate result of the breaches by Defendants as herein alleged, Plaintiff has suffered general and special damages (including, inter alia, emotional distress) in an amount in excess of the jurisdictional limit of this Court.  Plaintiff will, if necessary, amend this Complaint to allege the exact amount of said damages once ascertained.

107. Plaintiff is informed and believes, and based thereon alleges, that Defendants committed the acts alleged herein willfully, maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff and from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to recover punitive damages from Defendants.

108. Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

109. To the extent that any of these breaches occurred outside the applicable statute of limitations, the applicable statute of limitations is tolled, because, among other reasons, (a) Defendants agreed to toll the statute of limitations, (b) Plaintiff did not discover, nor could he with reasonable diligence have discovered, the breaches prior to the expiration of the relevant period of time; and (c) Defendants made various misrepresentations to Plaintiff relating to the relevant facts, and Defendants actively concealed from Plaintiff said omissions and misrepresentations and the true information concerning the same in

order to induce him to refrain from filing this action, and Plaintiff reasonably relied on the misrepresentations and omissions to his detriment.

## NINTH CAUSE OF ACTION

### (Fraud - Intentional Misrepresentation Against All Defendants)

110. Plaintiff realleges and incorporates each allegation of paragraphs 1 through 108, above, as though fully set forth herein.

111. Defendants made representations of material facts, in that Defendants affirmatively and repeatedly represented and reassured Plaintiff through each and every regular royalty statement issued to Plaintiff that Defendants had collected all royalty income known to or collectible by them on Plaintiff's compositions and had allocated "100%" of that royalty income according to contractual and copyright shares without impermissible deduction.

112. These representations were in fact false, as Defendants in fact:

   a) Made concealed deductions from royalty income received by them which they misappropriated for their benefit and profit despite making affirmative assurances to Plaintiff that 100% of royalty income was allocated among copyright owners according to contractual shares;

   b) Received royalty income which they knew to be exclusive property of Kenny Nolan which they had no contractual or property right to keep or administer and misappropriated that royalty income for their own benefit and profit despite affirmatively representing to Plaintiff that all such royalty income received by them was properly allocated to the true owners;

   c) Received royalty income on songs they were contractually required to administer on Plaintiff's behalf and which they knew to be royalty income due to Kenny Nolan but nonetheless deliberately allocated said income to a "suspense account" which was then misappropriated for their own benefit and profit despite affirmatively

COMPLAINT
29

representing to Plaintiff that all such royalty income received by them was properly allocated to the true owners; and

d) Received royalty income on songs they were contractually required to administer on Plaintiff's behalf and which they knew to be royalty income due to Kenny Nolan but nonetheless deliberately withheld for their own benefit and profit despite affirmatively representing to Plaintiff that all such royalty income received by them was properly allocated to the true owners.

113. When Defendants made the representations, Defendants knew them to be false.

114. Defendants made these representations with the intent to defraud and induce Plaintiff to:

a) Continue to entrust administration of the compositions and allocation of royalties to the accounting departments of Defendants;

b) Not bring legal action against Defendants to recoup royalties due; and

c) Forestall an accounting of Defendants' books.

115. At the time Plaintiff relied on these misrepresentations, Plaintiff did not know they were false and believed they were true.  Plaintiff acted in justifiable reliance upon the truth of the representations.

116. As a proximate result of the aforementioned fraudulent conduct of Defendants, Plaintiff has suffered and will continue to suffer in the future, damages, plus interest, and other economic and consequential damages, for total amount to be shown at the time of trial.

117. As a proximate result of said Defendants' conduct, Plaintiff suffered both consequential and special damages, including, but not limited to, anxiety, worry, mental and emotional distress in an amount in excess of the jurisdictional limit of this Court. Kenny Nolan suffers from a medical condition that renders him susceptible to physical and mental harm induced by external stressors such as Defendants' willful and tortious misappropriation of his sole source of income.   Plaintiff will, if necessary, amend this Complaint to allege the exact amount of his damages once ascertained.

118. Defendants' conduct described herein was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of the Plaintiff, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and was an intentional misrepresentation, deceit, or concealing of a material fact known to the Defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

119. Defendants' conduct described herein was undertaken by the corporate Defendants' officers or managing agents, identified herein as Doe defendants, who are responsible for supervision and operations, communications and/or decisions.  The afore-described conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate Defendants.  Said corporate Defendants further had advance knowledge of the actions and conduct of said individuals, whose conduct was ratified, authorized, and approved by managing agents whose precise identities are unknown to Plaintiff at this time and are therefore identified and designated here as Does defendants.

### TENTH CAUSE OF ACTION

### (Fraud - Negligent Misrepresentation – Against All Defendants)

120.  Plaintiff realleges and incorporates each allegation of paragraphs 1 through 118, above, as though fully set forth herein.

121. Defendants made representations of material facts, in that Defendants affirmatively and repeatedly represented and reassured Plaintiff through each and every regular royalty statement issued to Plaintiff that Defendants had collected all royalty income known to or collectible by them on Plaintiff's songs and had allocated "100%" of that royalty income according to contractual and copyright shares without impermissible deduction.

122. These representations were in fact false, as Defendants in fact:

   a)  Made concealed deductions from royalty income received by them which they misappropriated for their benefit and profit despite making affirmative assurances to Plaintiff that 100% of royalty income was allocated among copyright owners according to contractual shares;

   b)  Received royalty income which they knew to be exclusive property of Kenny Nolan which they had no contractual or property right to keep or administer and misappropriated that royalty income for their own benefit and profit despite affirmatively representing to Plaintiff that all such royalty income received by them was properly allocated to the true owners;

   c)  Received royalty income on songs they were contractually required to administer on Plaintiff's behalf and which they knew to be royalty income due to Kenny Nolan but nonetheless deliberately allocated said income to a "suspense account" which was then misappropriated for their own benefit and profit despite affirmatively representing to Plaintiff that all such royalty income received by them was properly allocated to the true owners; and

   d)  Received royalty income on songs they were contractually required to administer on Plaintiff's behalf and which they knew to be royalty income due to Kenny Nolan but nonetheless deliberately withheld for their own benefit and profit despite affirmatively representing to Plaintiff that all such royalty income received by them was properly allocated to the true owners.

123. When Defendants made the representations, Defendant had no reasonable grounds for believing the representations were true.

124. Defendants made the representations with the intent to defraud and induce Plaintiff to:

   a)  Continue to entrust administration of the compositions and allocation of royalties to the accounting departments of Defendants;

b) Not bring legal action against Defendants to recoup royalties due; and

c) Forestall an accounting of Defendants' books.

125. As a proximate result of the aforementioned fraudulent conduct of Defendants, Plaintiff has suffered and will continue to suffer in the future, damages, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

126. As a proximate result of said Defendants' conduct, Plaintiff suffered both consequential and special damages, including, but not limited to, anxiety, worry, mental and emotional distress in an amount in excess of the jurisdictional limit of this Court.  Plaintiff will, if necessary, amend this Complaint to allege the exact amount of his damages once ascertained.

127. Defendants' conduct described herein was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of the Plaintiff, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and was an intentional misrepresentation, deceit, or concealing of a material fact known to the Defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

128. Defendants' conduct described herein was undertaken by the corporate Defendants' officers or managing agents, identified herein as Doe defendants, who are responsible for supervision and operations, communications and/or decisions.  The afore-described conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate Defendants.  Said corporate Defendants further had advance knowledge of the actions and conduct of said individuals, whose conduct was ratified, authorized, and approved by managing agents whose precise identities are unknown to Plaintiff at this time and are therefore identified and designated here as Does defendants.

**ELEVENTH CAUSE OF ACTION**

**(Violations of California's Unfair Competition Law: California Business & Professions Code §§ 17200, et seq.)**

129. Plaintiff realleges and incorporates each allegation of paragraphs 1 through 127, above, as though fully set forth herein.

130. California Business and Professions Code §§ 17200, et seq. prohibits any unlawful, unfair, or fraudulent business acts or practices.

131. Defendants' conduct was unlawful in that Defendants engaged in a broad scheme to cheat Kenny Nolan out of payments otherwise due to him through their systematic, across-the-board, and intentional misinterpretation of the nature of royalties collected and payments made as alleged herein.

132. Defendants' conduct was fraudulent for reasons alleged herein including but not limited to, that Defendants formulated an opaque and artificial method for accounting for royalties received and payments made, deliberately frustrated efforts to audit their books in order to hide their misconduct, affirmatively and repeatedly made deliberate misrepresentations to Plaintiff that all royalties collectible on his compositions had been collected and that 100% of the royalties collected had been paid out according to contractual shares without hidden and impermissible deductions or diversions of royalty income to Defendants' own purposes.

133. Defendants engaged in "unfair" business acts or practices by converting monies properly due Plaintiff under the agreements. Defendants' misconduct offends public policy and is immoral, unscrupulous, unethical, and offensive, and causes substantial injury to consumers. The harm to Plaintiff resulting from Defendants' deceptive and unlawful practices outweighs the utility, if any, of those practices. There is no possible

economic justification for such conduct, and consequently, the gravity of the misconduct outweighs any possible economic justification offered by Defendants.

134. Defendants' illegal conduct, as described herein, is ongoing, continues to this date, and constitutes unfair and fraudulent business acts and practices within the meaning of Business & Professions Code §§ 17200, et seq., as interpreted by the California State Courts. Further, Defendants' unlawful and unfair business acts and practices present a continuing threat to Plaintiff and the general public in that Defendants have refused to publicly acknowledge and correct their wrongdoing, and provide compensation for the damages they have caused.

135. Pursuant to California Business & Professions Code § 17203, Plaintiff is therefore entitled to:

a) An Order requiring Defendants to cease the acts of unfair competition alleged herein;

b) An Order enjoining Defendants from continuing to divert royalty income due to Plaintiff to their own purposes and from misrepresenting the amount of royalties collected and paid out;

c) Full restitution of all monies paid to and retained by Defendants otherwise payable to Plaintiff including, but not limited to, disgorgement pursuant to California Code of Civil Procedure § 384;

d) Interest at the highest rate allowable by law; and the payment of Plaintiff's attorneys' fees and costs under, among other provisions of law, Cal. Code Civ. Proc. § 1021.5, or otherwise to the extent permitted by law; and

e) The payment of Plaintiffs' attorneys' fees and costs under, among other provisions of law, Cal. Code Civ. Proc. § 1021.5, or otherwise to the extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For a judgment declaring that Kenny Nolan owns a 50% of the copyright in the renewal term of the Co-Written Compositions.

2. For an accounting in accordance with the allegations of the Complaint.

3. For an award of damages, including actual damages and the disgorgement of any and all gains, profits, and advantages obtained by Defendants, as a result of their acts, in an amount according to proof at trial;

4. For special, and, if applicable, punitive damages, in accordance with proof at trial;

5. For the imposition of a constructive trust;

6. For temporary, preliminary, and permanent injunctive relief in accordance with the allegations of the Complaint;

7. For costs of suit and attorneys' fees, according to proof;

8. For prejudgment interest at the legal rate; and

9. For such other and further relief as this Court may deem warranted and appropriate.

Respectfully submitted,

DATED:                           LAW OFFICES OF JOHN MASON, LLP


By:    /s/ JOHN E MASON_____
       John E. Mason
       Attorneys for Plaintiff Kenny Nolan


Respectfully submitted,

DATED:                           J.J. LITTLE & ASSOCIATES, P.C.


By:    /s/ JAMES J. LITTLE_____

       James J. Little
       Attorneys for Plaintiff Kenny Nolan

## **DEMAND FOR JURY TRIAL**

Plaintiff Kenny Nolan hereby demands a jury trial on its Complaint pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

DATED:                          LAW OFFICES OF JOHN MASON, LLP

By:     /s/ JOHN E MASON_____
        John E. Mason
        Attorneys for Plaintiff Kenny Nolan

DATED:                          Respectfully submitted,

                                J.J. LITTLE & ASSOCIATES, P.C.

By:     /s/ JAMES J. LITTLE_____
        James J. Little
        Attorneys for Plaintiff Kenny Nolan